We're going to wrap up with 2140457 SEMS v. Griffin. Counsel, whenever you're ready. It pleases the court. Good afternoon. Bill Helfand for Sergeant Griffin, Officer Linebaugh, and Ms. O'Dell. All three of these individuals are entitled to the remaining presumption of immunity, which has not been disproven by the appellee plaintiff in this case on either of the two prongs of the immunity analysis the court is bound to apply. Starting with the question of a constitutional violation, despite properly quoting the precept that deliberate indifference is an extremely high burden to meet, the district court then simply let the plaintiff appellee off the hook in her obligation to meet that. The focal point in this case was not whether any of the individual appellants perceived a need for medical care. The undisputed evidence is they did not. It is rather whether each would have surmised based upon after the fact evidence, that is the autopsy report, that Mr. Qualls had swallowed a bag of drugs, and then the second potential hypothetical, that that occurred after Mr. Qualls was discharged from the hospital. Of course, what the appellants knew was that the hospital had evaluated, to the extent appropriately treated, and released Mr. Qualls to what the hospital called self-care. In fact, the undisputed evidence in the record shows that the appellants thought that if Mr. Qualls had swallowed drugs at all, he had done so before emergency medical services took Qualls to the hospital. That's at record 10-11. Now, of course, again, the district court properly quoted this court's opinion in Tamez and others that the evidence must show, one, each defendant individually had a subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn, two, that each defendant actually drew that inference, and three, that each defendant's response, based upon that drawn inference, indicated a subjective intent to harm. Although, again, the trial court cited, in fact, quoted that language, the trial court then did not make that analysis at all. The evidence shows to the contrary. All of the undisputed evidence shows that the individuals who remain in this suit all attempted to care for Mr. Qualls. At 757 of the record, the record shows that Sergeant Griffin offered to drive Mr. Qualls anywhere in the county when Sergeant Qualls was called back. I'm sorry, Sergeant Griffin was called back to the hospital because Mr. Qualls would not leave. Mr. Qualls refused, and Sergeant Griffin took him to the city's lockup, where all three appellants provided him water, meals, and encouraged him to sleep and rest, and all based on the fact that all had prior experience with Mr. Qualls, which suggested that if he would do just that, he would, their term was detox, or this court has used the term sleep it off, over a reasonable amount of time, and then go home as he had done in the past. That is very similar to what this court found in the state of Allison, in that the evidence here demonstrates an effort to monitor and care for Mr. Qualls, and therefore disproves the appellant's burden to show deliberate indifference. Now, based upon their own prior experiences, the appellants all believed that Mr. Qualls would, again, to use the court's term, sleep it off. And when they saw him vomit, Ms. O'Dell actually pointed out that that black vomit was probably the activated charcoal that the hospital had probably used to neutralize stomach contents. That's at record 1542. And that Mr. Qualls had done the same thing on a previous occasion, at record at 1544. So no appellant was deliberately indifferent. In fact, no appellant actually had some reason to believe that Mr. Qualls needed some medical care he wasn't getting. As this court pointed out in Trevino versus Hins, in 2018, which is cited at page 21 of the appellant's brief, an officer's failure to immediately recognize ambiguous symptoms as medical emergency is not deliberate indifference. And vomiting, as this court observed in Trevino, is, even coupled with shaking, does not indicate an immediate need for medical care. And again, it might be a different situation if those symptoms were presented in the abstract, but they're presented to an individual who had done the very same things and successfully left the lockup on prior occasions. The theory here, which the trial court accepted, was based on complete hindsight. It was the autopsy report, and now a theory that not only Mr. Qualls ingested drugs, but that he ingested those drugs while he was in custody. And so lastly, as to the question of a constitutional violation, the trial court failed again. The trial judge acknowledged that this well-settled circuit law, that neither negligence nor gross negligence allows the inference of a need for medical care. And yet, that's exactly what the trial judge said as to all three individuals. The jury could infer that the individual appellant defendants knew of a need for medical care. Now, to the extent that it's clear that there's no constitutional violation, it's even clearer that there's no violation of clearly established law. There is simply no analogous case that would have told any of these appellants that what they were doing was a constitutional violation. But there are three opinions disregarded by the appellant and essentially disregarded by the trial court, which certainly point us in the right direction. In November of 2018, just two months before Mr. Qualls passed away, in Trevino versus Hins, this court identified a line of cases closely analogous to the facts of this case, although not reaching the facts demonstrating the reasonableness of the conduct of the appellants in this case. In affirming a summary judgment based on qualified immunity, this court pointed out, in Trevino, its opinions in Tamez versus Manthe and a state of Allison versus Wansley, both of which are cited in the briefing. Although those cases lacked some of the facts of the present case, here, the appellants were faced with a prior practically identical set of experience with Mr. Qualls with a successful detox and a recent discharge from the hospital based on a medical determination that Mr. Qualls was now qualified for self-care. But again, these are probably the most analogous cases the court can locate. All of those cases result in holdings that the officials were entitled to qualified immunity. Now, the court need not address the question of whether this circuit's opinions alone are sufficient to establish clearly established law, because here, even if this court's opinions alone were sufficient, they would require reversal and remand on the second prong of the immunity analysis. Because the burden is on the appellee, not the appellant, to identify clearly established law. And then, again, in this case, the appellee completely failed to do so. Instead, and tacitly acknowledging her inability to do so, much of the appellee's brief is focused on the argument that this court should change the law of qualified immunity. If the Supreme Court's mandate of the appellee's burden to identify a robust consensus of persuasive authority means anything, it means, at the very least, that an appellee in this system, I'm sorry, in this situation, excuse me, has to do the same thing which this court demanded just last month in Solis v. Serrett, an opinion authored by Judge Engelhardt for the court, which is show us a case that you say demonstrates that no reasonable officer could have believed their conduct to be constitutional. In Solis, counsel did that. They actually pointed to two cases, but this court rejected that they were sufficiently analogous to foreclose the presumption of immunity. In this case, appellee didn't even do that. Appellee identified only cases with the most broad and certain circumstances and argument of the need to provide medical care. In fact, it's telling that the appellee and the trial court, unfortunately, did not in any way discuss Treveno v. Hinge, Tamez v. Manthe, or Estate of Allison at all, except that, oddly enough, the trial court pointed out Tamez's holding, which undermined the trial judge's denial of immunity on the second prong, but didn't explain why that case would not, as it does here, mandate immunity. What the appellee did here, I believe page 32 of her, I believe it's at page 60 of her brief, was simply to say the trial court cited a number of cases and then identified six cases that the trial court cited. But, of course, quantity is no substitute for the qualitative analysis that's required here. None of those cases, which the appellee listed the district court did cite, sometimes simply for the purpose of identifying the standard of qualified immunity, speak to the conduct in this case. As this court explained in Morrow v. Meacham, and most recently in Judge Englehart's opinion in Solis v. Serres, to overcome the presumption of immunity, the legal presumption that immunity applies, the appellee must point the court to existing authority that forecloses the question, such that no reasonable official could have believed the conduct did not constitute deliberate indifference. As Judge Oldham said, I think it's well said in light of recent Supreme Court cases, this burden is a doozy. And in this case, appellees simply shrugged it off, and the trial court allowed that. There is simply no citation, and nor can one be found based upon Fifth Circuit law alone, that would have told the appellants that they could not reasonably believe what they were doing was something less than deliberate indifference. So still having trouble understanding how you can convincingly distinguish this case. I'm having trouble hearing you, Your Honor, I apologize. Explain to me how you can distinguish this case. You said there's nothing to put officers on alert that what they did violated any clearly established right, but tell me how to distinguish this case from Easter. I'm sorry, Judge, I don't have to hear you. Tell me how to distinguish this case from our decision in Easter. Well, again, in this case, the officers took Mr. Qualls directly from the hospital, which he was cleared to go home for self-care. And they put him in the same situation he had been on numerous occasions, where he had successfully detoxed or slept it off. And so the officers, the undisputed record demonstrates exactly why it's distinguishable. And that is because as the officers were confronting the situation as it was developing, for example, the black vomitus, the question that Odell asked after the black vomitus of whether it was necessary to call EMS, the court has the very answers that were the scienter of these individuals, which, of course, is the sine qua non of this question, which is what did they think, and could they have reasonably thought that? And Lieutenant, I'm sorry, Sergeant Griffin answers, no, he's just vomiting because he's dehydrated and because he's got that stuff in him, and he just needs time to sleep it off. So to build on Judge Willett's point, it seems to me that the hospital visit and the discharge and the officer's prior experience with Mr. Qualls sort of cuts both ways. I mean, as in Easter, they know he's a drug user, he's a drug addict, he's detoxing. And so they have prior experience with him and some knowledge about his condition. So when it goes differently than what maybe it had done before, didn't it at some point become obvious he wasn't just sleeping it off like he did before? And wouldn't that be a genuine issue of material fact? Well, I certainly understand your point, and it's well taken, Judge, except that I quarrel with the assertion that at some point it became obvious he was going the other way. What about the second time he threw up and there was a baggie there that obviously means something had opened in him that maybe he didn't intend to take? I don't know that that's obvious, but it's certainly a reasonable inference. But with all the other factors. Right. But it doesn't tell. So they looked at that, and again, the court has the undisputed record of what they thought about that. They thought he was throwing that up, that's what Sergeant Griffin said, and that he was going to continue to throw it up and that that was going to clear him. So it may have been wrong. It may have been negligent. It may have been grossly negligent. But this court has said that that's not the test at all. And so the real question is, did they perceive the need for medical care? They enunciated, they done it specifically on video and recorded that they did not. Were they wrong? In hindsight, it turns out that they were wrong. But at the time, whether it's Easter or any other case of this court, particularly in light of Tamez Trevino and the state of Allison, we could not say that they could not have believed that they were doing the right thing or that they had to get medical care at that time. They didn't perceive it. They didn't fail to act because of it. And they certainly didn't demonstrate the type of intent to cause harm that's required by the three-pronged test of this court. I see my time is close to up. Thank you. Thank you. Mr. Thomas, I take it you see things differently. Yes. Yes, Your Honor, we do. Please the court, Bruce Thomas for the appellee, plaintiff below, Frances Sims, the mother of Mitchell Falls. The district court made numerous and a host of determinations as to the sufficiency of the summary judgment evidence to raise fact issues for trial, which the appellants never attack as immaterial. The district court determined that the summary judgment evidence was sufficient to show that both Linebaugh and Griffin were aware that Qualls was intoxicated on meth when he arrived, that they observed him getting worse instead of better over the duration of his detention, that they heard him yell for help, that they heard him ask for a hospital, that they saw him vomit, that they knew that he had likely swallowed a full bag of drugs. The court further said that a reasonable jury, based upon the disputed evidence, could determine that Qualls' injuries were so severe and their cause so plainly evident to the officers that they acted with deliberate indifference. And it's summed up by saying that the record demonstrates that the officers failed to provide treatment, ignored the complaints of a clearly ill inmate they knew had a history of drug use and had likely swallowed a bag of drugs. The court makes the same determinations as to the sufficiency of the summary judgment evidence with respect to O'Dell. And we certainly believe that not only was the evidence sufficient, the evidence was compelling to support fact issues. But that's not the issue on this appeal. This court doesn't have jurisdiction to determine whether the court's sufficiency determinations are correct. As this court stated in Easter versus Powell, which I picked simply because it's prominently cited, we do not have jurisdiction to determine whether the evidence is sufficient to support either party's version of facts. Of course, they restated it in Thompson versus Upshur County that we rely upon for other purposes. There is no jurisdiction to review whether summary judgment evidence would support any particular finding. The court certainly has jurisdiction to determine whether the disputed fact issues that the court determined were sufficiently supported by the evidence are material. But how could they not be material here? How could it not be material that they observed Quall's getting worse? How could it not be material that they heard him scream for help? How could it not be material that they knew that he had likely swallowed a bag full of drugs? Of course it's material. That's why they don't argue that they're not material. What they argue, in effect, is that the disputed issues are not genuine. They want you to treat this case as an undisputed evidence case. But it's not undisputed. There are all sorts of disputed facts in this case. They had 22 pages single space in their motion for summary judgment that they claim were undisputed facts. And we controverted, at least to the opinion of the trial court, with respect to three of the four defendants with a similar 22 pages of single space controverted facts. And those are first principles. Mr. Helfen likes to talk about presumptions here. But the first principle presumption is that the district court's determination of the sufficiency of the evidence is inviolate in an interlocutory appeal.  if we're successful in obtaining a judgment. But they can't raise it today. They can't attack the evidence that the court determined was sufficient today. And they don't attack it as material. The only argument they make in their brief with respect to, and I don't see anything about attacking the court's mention of autopsy. I don't think the word autopsy is even in the first section of their brief. But the only specific argument they make after saying there's insufficient summary judgment evidence is they claim that they couldn't believe that he needed any medical treatment because he got medical treatment in a hospital before he was arrested. But that's just pointing to controverting summary judgment evidence. That's not an attack on the materiality of the court's determination that there's a disputed issue of fact with respect to whether the officers knew that he had probably swallowed a bag full of drugs. And that explained why he wasn't getting better. That explained why he wasn't detoxing as he had on previous occasions. Why five hours, 10 hours, 15 hours, 20 hours, and more went by. And he just kept getting worse. And they knew why when he threw up that baggie. Now, it's not my job as the plenipotentiary to defend the district court's sufficiency determinations. But I'm happy to talk about the sufficiency of the evidence because it's not an undisputed case. There's all sorts of disputed evidence with respect to the officer's knowledge. And it begins five hours into his detention. The first evidence that there's something seriously going south here is at 335 AM when a male voice says, someone has to call an ambulance. Well, there are only two male officers on duty that night. So logically, it has to be one of our two defendants, Griffin or Leinbaum. So at that point in time, it's obvious to one of them that things are deteriorating significantly. And apparently, the dispatcher, Odell, talks them out of calling an ambulance at that time. But by the time things deteriorate to the point where he's coughing up the baggie, the officers immediately recognize what that is. Griffin, in his incident report, says that he recognizes it as a bag, quote, normally used to hold illegal narcotics. So and that's the way they discuss it among themselves. Oh, he must have swallowed this whole bag of stuff. He's going to be throwing this stuff up all night. They're not talking about charcoal. They're talking about the narcotics that were in the bag, they believed was in the bag. And aren't they relying on what the hospital personnel told them when Qualls was discharged? In other words, was it reasonable for them to consider that, well, he'd had this history. He'd been checked out. And so therefore, he's just detoxing again? Only up to a point. Remember, he went to the hospital not to detox, or not because he was overdosing on drugs. He went to the hospital because he was having chest pains and a rabid heartbeat. And they got that issue resolved to the point to where they could release him. And as with everybody who goes to the emergency room, they said, come back with emergent concerns. They didn't say, you can't come back for 33 hours. They always tell you, if you get worse, come back. And that's exactly what he wanted to do. At hour six, he says, I need a hospital, please. He wanted to go back to the hospital, but these officers in the city of Jasper wouldn't allow him to do so. So up to a point, it might be reasonable to assume that he'd been to the hospital and then checked out, and he needs to sleep it off. But when five hours, 10 hours, and ultimately 20 hours goes by and he starts vomiting, it's very clear by that time that things aren't going in the direction that they anticipated. When they're talking to the hospital, they're talking about three or four hours until he should begin detoxing. And now, they're into the next day, and he's throwing up. He's getting worse. He's able to stand when he comes in, and now he's on the floor for hours for the entire time. He never walks again. He's unable to walk. He never sleeps. He just keeps crying out in pain, asking for help. He never eats anything. They say, well, we encouraged him to eat. Their idea of encouraging him to eat is leaving a TV dinner on the toilet, not the most appetizing way to encourage him to eat. But even if he could get to it, he has no appetite. He eats nothing the entire time he's there. So the prescription that he's supposed to eat and sleep it off clearly isn't working. If that has worked in the past, it's not working now. And what's different than in the past? A lot of things. A lot of things are different in the past. It's not true that this incident is the same as in the past. In the past, he's been dressed out in jail guard and didn't have an opportunity to smuggle in drugs in his street clothing. In the past, he hasn't swallowed up, he hasn't thrown up a baggie. In the past, he's started to sober up. He's just getting worse this time, not able to stand, calling out in pain. When they go in to clean up the vomit a couple of times, they don't clean him up. They just kind of shove him aside, which they refer to trying to roust him. And he screams out in pain. So they clearly know that something, that things are going very south. And they know exactly what it is. It's the baggie that explains everything. Once he throws up that baggie, it's clear that this is a narcotics bag. What's going south is that he swallowed his bag full of narcotics. That's why he's not getting better. That's why he urgently needs medical assistance. Our medical expert in this case testified that if they had gotten him to the doctor at that point, he would have survived this intoxication. But they didn't do it. Our law enforcement expert, again, disputed evidence in the case, testified that anybody who wasn't acting with deliberate indifference would have immediately recognized the issue here of this narcotics bag and would have immediately gotten medical assistance for Mr. Qualls. There's a host of evidence, circumstantial and direct, that these officers did appreciate the seriousness of Mr. Qualls' condition. And regardless, the district court's determination that the evidence was sufficient is not subject to review in this interlocutory appeal. Counsel, what about the clearly established ride? Does Easter get us there? Well, I think it does. But it's not the only case. They say Easter is the district court relied exclusively on Easter. But it doesn't. It does exactly what they say it should do, relies upon a body of law. Give us your best cases. Well, I think our best cases are Thompson versus Upshur County and Austin versus Johnson and Dyer versus Houston. Dyer versus Houston, we don't claim that's the best case because it established law. We claim it's one of our best cases because it used the same clearly established law analysis that the district court did here by citing Thompson versus Upshur County. What they claim is we can't rely upon Thompson because it was a DT's case. The prisoner, the detainee in that case ended up convulsing and dying from delirium tremens. I say, well, that's not factually sufficient because we have a drug overdose here instead of DT's. But that's not what this court determined in Dyer versus Houston. Dyer versus Houston was not a DT's case. In fact, in Dyer versus Houston, the detainee had intentionally harmed himself by beating his head many times against a cage in the back of a police vehicle. So this court said Thompson versus Upshur County clearly established law and relied upon that, putting the principle beyond doubt and giving fair notice to those officers that because they observed him banging his head, that they knew he was probably injured and that they should have gotten treatment for him rather than just blowing it off. By blowing it off, they were deliberately indifferent. And Thompson put them on fair notice. So Thompson, so Dyer implicitly rejects the exact argument that they've made, that we can't rely upon Thompson because it's not a DT's case. It's not the way the detainee was injured or becomes sick that is important. It's the fact that he is sick or injured and the officers are not providing him treatment. To use a Mullinex term, the particular conduct that puts the issue beyond debate is a failure to get treatment for a prisoner that the officer knows is seriously ill or injured. Again, similar facts in Austin versus Johnson. In their 2003 case, that was a heat stroke case. And the detention officials in that case delayed for about two hours getting medical attention for the heat stroke. Again, this court said that that was deliberate indifference. So Austin versus Johnson and Thompson versus Upshur County put these defendants on fair notice, their action. In this case, as the district court determined was the most favorable view of the summary judgment evidence. Put them on fair notice that their actions were unconstitutional. I think even without a close analog case like Thompson and Austin, the court didn't need an extensive analysis here because this court's precedent can be applied with obvious clarity to the constitutional standard. These aren't the constitutional standard the court has given us. The factors for whether there's deliberate indifference is whether the officers refused treatment, ignored complaints, or intentionally treated the detainee incorrectly. Those are pretty specific. Those aren't subject to a lot of malleability. And they apply very easily and simply here. Obviously, they ignored his complaints. They ignored his complaints over the course of 33 hours. They ignored his requests to go to the hospital. They ignored his repeated requests, literally dozens of requests for help. Right after he asked to go to the hospital, please, then a couple of minutes later he said, help, help, help, help. I'm sick. And they didn't respond to that. So I think this court's precedent applies with obvious clarity to this case, regardless whether there's a close factual predicate. But I submit that Thompson and Austin and Easter and the other cases the court has cited are sufficiently factually close enough, as this court's decision in Dyer shows us. Dyer used the same sort of analysis that we use. Even though he didn't mention it in his oral argument because they relied so heavily on the Cope opinion in their briefing, I'd like to, just in a couple of minutes, distinguishing the Cope versus Cogdell. That was a suicide case. I don't think it has a lot of applicability here. But they rely upon it heavily for the clearly established law issue as to whether our factual precedent is close enough. In Cope, Cope wasn't a case where the defendants literally did nothing. It was a suicide case where the jailer did something. Cope made a point of specifically pointing out that the jailer did something. He didn't call 911, as we said he should have. But what he did was he called his supervisors, and they called 911. That resulted in some delay, and that was one of the issues that we had in the Cope case. We handled the Cope case. And we're handling it in the Supreme Court as well. But so I'm familiar with the case, and it has very little relevance to this case. The main issue in Cope was whether a telephone cord was sufficiently obvious that they should have never put the detainee alone in a room with a telephone cord, why the guard was outside under a policy of do not enter alone, and they only had one jailer on duty. That's why he didn't go in to assist when the individual began suicide. But he instead called his superiors, who rushed to the jail, and they ended up calling 911. So EMS got there within 15 minutes in the Cope case. We do not allege that in our case that they needed to call within 15 minutes. And obviously, it's not a case like Cope where EMS was ultimately called, at least while Mr. Qualls was still alive. What we allege is, just as in Thompson, that it became obvious well before he died that he was in serious, dire medical need, and that well before he died, they should have gotten additional medical assistance for him. Thank you. Sorry to say additional, but I don't want to say additional because the jail never got medical assistance for him of any type. When he went to the hospital previously, that was on his own accord because of his chest pains. The defendant's actions in this case were just the opposite of the compassionate, caring manner that counsel attempts to depict them. They did not want to arrest Mr. Qualls at the hospital because of any concern for him from their comments that were captured by tape. They were perfectly willing for Mr. Qualls just to walk on off into the night, and whatever happened to him, happened to him. They just wanted to wash their hands of him, take him somewhere where it was somebody else's problem and wasn't theirs. But they were forced to deal with him, and that sort of disregard for his concern for his safety reflected over the course of the next 33 hours until he was found dead an hour after he passed away. I see my time has expired. Is there any questions? All right, Mr. Thomas, thank you very much. We appreciate it. So you do concede, right, that we lack any jurisdiction to decide whether fact disputes that the district court may have found. We have no jurisdiction to decide whether those are genuine. I agree with that, but I don't think that's true. All we can do is decide whether those disputes are material, right, whether they might affect the outcome of the lawsuit. As to the first prong, yes, Your Honor. But of course, the resolution of that question doesn't address the second prong of the qualified immunity analysis, which is could the evidence have shown every reasonable officer that medical care was necessary. But here, it isn't a limitation on the first prong either, because again, all the trial court did was after pointing out correctly this circuit's holding that one cannot reason, one cannot, not even reasonably, one cannot infer deliberate indifference based upon negligent or even gross negligence. The trial court then said, perhaps the jury will. That's exactly what the trial court did. It did not find that there is a fact question as to any material fact of deliberate indifference, the three-pronged test that this court recites, having cited other cases, in Tamas, which is facts demonstrated a substantial risk of serious harm. And these are the two big ones, Judge, and this is where the case falls off. Each defendant actually drew that inference. The contrary is demonstrated by the undisputed evidence. What these folks were doing were trying to figure out what they were seeing and analogize it to things they had seen before and what they had been told. And in that regard, counsel made a mistake in terms of why Mr. Qualls was at the hospital. I don't have the record site, but it's on page three of the district judge's opinion. At 830, when Sergeant Griffin and Officer Limebaugh returned to the hospital, an EMT said that Mr. Qualls was still just as bad as when they dropped him off, and a nurse responded, quote, because he's on meth. So whatever was in the bag, unless it was something other than meth, and nobody could opine about that, the officers would have believed that Mr. Qualls was already on meth, because a nurse told them that at 830 PM when they visited the hospital. So as much as the officers would have known is, quote, to quote the nurse, he's on meth. And when the bag he came up to answer Judge Wilson's question is immaterial then to whether he was or wasn't on meth, because that's what the officers were told, and that's what they had experienced in the past. So we can debate whether there's a question of subjective knowledge of facts from which an inference of a substantial need for medical care could be drawn, but there is no reasonable debate that no defendant drew that inference and none exhibited a subjective intent to cause harm based upon it. Everything shows the contrary. And I'm not talking about deposition testimony now. I'm talking about contemporaneous video evidence of what they were saying. The record shows the evidence, the video evidence shows them trying to noodle this out, figure out what to do. Odell asks, should we call EMS? Sergeant Griffin responds, no, he's coming down and he's just dehydrated. So as to both of those elements, as to the first pronged answer Judge Willett's question, no, there's not a question of fact here that requires a trial, to the very contrary. But lastly, in the brief time that I have, it's so much easier on the second prong of the analysis. Because to answer further Judge Willett's question during my opening presentation, even if Easter told us something about the law of this circuit as of the time of this incident, it certainly tells us something. It's not sufficient to clearly establish the law, particularly in light of subsequent opinions in Temes and Trevino. Temes and Trevino, like a state of Allison, are probably more analogous. Although there are analogies, to be sure, as they relate to Easter as well. But taken together, they do not create a robust basis of authority from which no officer could have had any reasonable constitutional choice to respond. And that's what's required. In fact, under city of Tahlequah, which is cited in the 28J submission, the Supreme Court has made clear Easter alone is not sufficient to deny these individuals the presumption of immunity. Immunity is presumed. It was the appellee's burden to demonstrate case law from which it must be divested, and they have failed in that regard. I respectfully submit that the court should reverse and render judgment in favor of all three. Thank you. Thank you very much, counsel. That'll wrap up today's four cases. We're going to stand in recess until 1 PM tomorrow.